MEYERS et al. v. SECOND JUDICIAL DIST. COURT,
IN AND FOR WEBER COUNTY, et al.

No. 6771.  Decided March 5, 1945.  (156 P. 2d 711.)

See 38 C. J. S. Grand Jury, Sec. 40. 24 Am. Jur., 862.

*J. A. Howell,* of Ogden, *H. L. Mulliner,* of Salt Lake City, *Arthur Woolley, Ira A. Huggins,* and *David L. Stine,* all of Ogden, *Willard Hanson* and *Stewart M. Hanson,* both of Salt Lake City, and *Royal J. Douglas,* of Ogden, for plaintiffs.

*Grover A. Giles,* Atty. Gen., and *Zar E. Hayes,* Asst. Atty. Gen., for defendants.

WOLFE, Justice.

Original proceeding upon petition for writ of prohibition. The petitioners seek to restrain the defendants from proceeding with the trial of the petitioners on indictments charging petitioners with the crime of criminal conspiracy. The contention is that the defendant court has no jurisdiction to proceed with said trial, that it nevertheless will proceed unless restrained, and that the petitioners will suffer irreparable injury unless the writ issues.

The petitioners contend that the challenged indictment was not returned by a grand jury legally constituted in that:

(a) the order made for the calling of the grand jury was made and signed in chambers by the judges of the District Court of Weber County and that such purported order is the act of the judges as distinguished from an order of the court duly and regularly made in session; (b) that the clerk and attending officers did not certify the list of names drawn for said grand jury to the Sheriff of Weber County; and (c) that persons other than the grand jury and witnesses and the district attorney, were present during the sessions and deliberations of the grand jury and there is reasonable cause to believe that the petitioners were prejudiced thereby.

Upon the allegations of a petition setting forth the foregoing matters, an alternative writ issued. In answer thereto the defendant judge admitted that the order calling the grand jury which returned the indictment was made and signed in chambers; that though both judges of the Second Judicial District held regular sessions on date of the making of said order, no entry was made in the minutes of the regular proceedings regarding the calling of the grand jury. The allegation that the list of the grand jurors drawn was not certified by the clerk and attending officers to the Sheriff of Weber County was denied by the answer. However, the evidence adduced at the hearing on motions to quash the indictment, which evidence was by order of this court certified to this court, discloses that the sheriff and the deputy to whom the list of jurors was handed both testified that the list delivered was not certified. The answer also admitted that persons other than the district attorney, grand jurors and witnesses, to wit, Joseph E. Evans, special assistant attorney general, and Zar E. Hayes, assistant attorney general, were present during the examination of witnesses but denied that they were present during any of the deliberations of the grand jury or during the expression of votes upon any matters before the grand jury.

There is no merit to the contention that the order calling the grand jury was invalid because signed by a judge in

chambers. There is no statutory or constitutional provision which requires such an order to be signed by the court sitting in regular session. Section 48-0-21, U. C. A. 1943, upon which the petitioners rely to support their contention that the order must be entered by the court in regular session does not so provide. The section purports to govern the procedure for drawing the names of persons to sit on the grand jury. The fact that the section provides that the clerk shall draw the names of jurors to sit at the term of court at which a grand jury "be ordered by the court" is not controlling. The words "court" and "judge" are often used interchangeably. *Sartin* v. *Snell*, 87 Kan. 485, 125 P. 47, Ann. Cas. 1913E, 384; *United States* v. *McCabe*, 1 Cir., 129 F. 708, 64 C. C. A. 236; *Newby* v. *Bacon*, 58 Cal. App. 337, 208 P. 1005. The logical place for a provision governing the procedure to be followed by the judge or court in calling a grand jury would be in Chapter 18, Title 105, which expressly purports to govern the procedure for the formation of a grand jury. Neither this chapter nor the Constitution requires that an order calling a grand jury be entered by a court sitting in regular session. In the absence of such an express require- ment we hold that under Section 20-3-16, U. C. A. 1943, the order calling a grand jury could properly be entered in chambers.

We do not deem it necessary to determine whether it must be the judge as distinguished from the court who entered the order in chambers. Judges in entering such orders need not go through any particular mental process before performing each function to decide whether they act as judges or as the court. Having the power to make the order calling the grand jury and to make it in chambers, they will be presumed to have performed the act in the correct capacity. It would be an absurdity to hold otherwise.

The second contention that the grand jury was not legally constituted because of the failure of the clerk and other attending officers, in accordance with pro- visions of Sec. 48-0-22(8), to certify the list of

names drawn for the grand jury to the sheriff of Weber County, is also untenable. Sec. 48-0-22(8) provides:

"Separate lists of the names of the persons so drawn for trial jurors * * *, with their places of residence, shall be made and certified by the clerk and attending officers and delivered to the sheriff of the county."

The question as to whether failure to comply with the requirements of this provision would when timely raised be fatal to the legality of the jury drawn depends upon whether the section is mandatory or merely directory. As noted in 24 Am. Jur., p. 45, Sec. 19,

"Statutory provisions regulating the manner of selecting or drawing a grand jury are either mandatory or directory, depending more on their purpose than their language. Those which relate to the number and qualifications of jurors, or which are designed to secure impartiality or freedom from unfair influences, are ordinarily deemed to be mandatory; those which prescribe mere details as to the manner or selection or drawing are usually regarded as directory."

In *State* v. *Distefano*, 70 Utah 586, 262 P. 113, 114, we noted that

"It is quite generally held that statutory provisions regarding the drawing and summoning of juries is directory and not mandatory." Citing authorities.

There is, in the instant case, no showing of prejudice to the petitioners from the failure of the clerk to follow specifically the direction of the statute. The persons required by statute to draw the jury did so and certified the list so drawn. The only irregularity was the failure of the clerk to deliver the certified copy to the sheriff. The record shows that the clerk did deliver a copy of the certified list to the sheriff, and that upon this list the sheriff summoned the grand jury. There is no showing that any person actually drawn and listed on the certified list was left off the venire nor is it contended that persons not drawn were summoned. No claim is made of fraud or impartiality.

There was substantial compliance with the requirements of this statute. Since this statute was directory only, deviations from it without a showing of fraud or prejudice to the party questioning the regularity of the formation and selection of the grand jury will not be grounds for setting aside the indictment.

The third contention, that unauthorized persons were present during the session of the grand jury, is based upon Sec. 105-19-9 and the prohibition contained therein. This section provides:

"* * * The district attorney or attorneys for the state may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable by them, and may interrogate witnesses before them whenever they shall deem it necessary; but no other person shall be permitted to be present during the sessions of the grand jury, except the members, interpreters and witnesses actually under examination, and no person must be permitted to be present during the expression of their opinion or the giving of their votes upon any matter before them."

The answer filed to the alternative writ of prohibition admitted that one Zar E. Hayes, a duly appointed, qualified and acting assistant attorney general of the state of Utah, and one Joseph E. Evans, a duly appointed qualified and acting special assistant attorney general, were present during some of the sessions of the grand jury. There is no claim of fraud nor is there any showing of actual prejudice to the petitioners from the appearance before the grand jury of these two assistant attorneys general. The contention is that no actual prejudice need be shown, but that the mere presence of unauthorized persons at the sessions of the grand jury is sufficient to render void this indictment. Section 105-19-9 does expressly prohibit any person other than those authorized to be present at the sessions of the grand jury. While there is some disagreement in the authorities as to whether the mere presence of unauthorized persons, without a showing of prejudice, would be sufficient to render an indictment void, the weight of authority and the better reasoned cases so

hold. See *Coblentz* v. *State*, 164 Md. 558, 166 A. 45, 88 A. L. R. 886; *Latham* v. *United States*, 5 Cir., 226 F. 420, L. R. A. 1916D, 1118; *Hartgraves* v. *State*, 5 Okl. Cr. 266, 114 P. 343, 33 L. R. A., N. S., 568, Ann. Cas. 1912D, 180; *United States* v. *Edgerton*, D. C., 80 F. 374, 375; *United States* v. *Rosenthal*, C. C., 121 F. 862; *Com.* v. *Harris*, 231 Mass. 584, 121 N. E. 409; *Husband* v. *Superior Court*, 128 Cal. App. 444, 17 P. 2d 764; *Hicks* v. *State*, 97 Fla. 199, 120 So. 330. Some of the above cases involved express statutory provisions to the effect that the presence of unauthorized persons would be grounds for setting aside the indictment, but even absent such a statute the basis for the reasoning behind these cases is essentially sound.

A grand jury has broad inquisitorial powers. Its sessions, being secret, make it impossible for an accused to defend himself or for him to show prejudice from the appearance of unauthorized persons before the grand jury. The statute is designed to free the grand jury from all outside influence so that the indictment will be returned solely upon evidence adduced free from outside influence.

This phase of the case must, therefore, turn upon the determination of whether or not these assistant attorneys general were authorized to appear. If their presence was unauthorized, the indictment upon motion should have been quashed.

The defendants justify the appearance of the assistant attorneys general under the language of Sec. 105-19-9 providing that

"the district attorney or attorneys for the state may * * * appear before the grand jury * * *."

The petitioners counter that the use of the disjunctive "or" in referring to "the district attorney or attorneys for the state" limits the number of attorneys that may be present; that under this language, "attorneys for the state" can only appear in case of the absence or disqualification of the district attorney, but that the district attorney and other

attorneys for the state may not both appear; that since the district attorney appeared himself no other attorney could properly be present. In construing this language it may be noted that the words "attorneys for the state" undoubtedly mean the same now as they meant when first drafted into the section.

The legislative history of this section antedates statehood. In its earlier form it provided that "The attorney or attorneys for the people" might appear. C. L. 1888, p. 684, Sec. 4920. It is clear that under this language more than one attorney for the people could appear. The language is in no way a limitation upon the number of "attorneys for the people" who could appear, except in so far as the class limits the numbers. Shortly after statehood this language was changed to read "The county attorney or attorneys for the state" may appear. Revised Statutes 1898, Sec. 4720. In 1901, when the office of the district attorney was created and the duties of the county attorney were modified, the language was again changed to read "The district attorneys or attorneys for the state." Laws of 1901, Chap. 7, page 8.

The change in language from "attorney or attorneys for the people" to "county attorneys or attorneys for the state" was not designed as a limitation upon the number of attorneys who could appear before the grand jury in behalf of the state, except as the class limited the number.

Further, Sec. 87-8-5, U. C. A. 1943, makes it the duty of the district attorney to attend all sessions of the grand jury in his district. Thus the district attorney must attend or shirk his duty. If it were intended that only one attorney could appear for the state, then there would appear to be no purpose in using the language "district attorney or attorneys for the state" for the term "attorneys for the state" cannot be construed to mean an attorney selected in case the district attorney is absent or disqualified. This is so because the section providing for selection of such an attorney was in effect prior to 1901 when section 105-19-9 read "county attorney or attorneys for the state."

It certainly could not have been held during that time that the words "attorneys for the state" meant an attorney selected to act in place of a disqualified or absent district attorney. There is nothing to indicate that the words "attorney for the state" are to be given a different meaning now than when used in the phrase "county attorney or attorneys for the state." Since the district attorney must be present or shirk his duty, and since "attorneys for the state" cannot be construed as meaning an attorney selected in place of an absent or disqualified district attorney, the words "attorneys for the state" are mere surplusage unless we construe the language "district attorney or attorneys for the state" as permitting the district attorney and attorneys for the state to appear. When it is necessary in order to give effect to a statute as a whole the word "or" will be construed as though it were "and."

It might also be noted that in *State* v. *Mickel*, 23 Utah 507, 65 P. 484, decided prior to the 1901 amendment to Sec. 105-19-9 when the language "county attorney or attorneys for the state" was used, we held that the district attorney, being an attorney for the state, could appear before the grand jury. From the above we conclude that the district attorney and attorneys for the state may appear at the sessions of the grand jury for any of the purposes enumerated in Sec. 105-19-9.

In developing the rationale of their argument that assistant attorneys general cannot appear before a grand jury the petitioners contend that there is no statutory authority for even the attorney general to appear. This view is untenable. Sec. 87-6-1, U. C. A. 1943 provides in part:

"It is the duty of the attorney-general: * * * (5) To exercise supervisory powers over the district and county attorneys of the state in all matters pertaining to duties of their offices, and from time to time require of them reports as to the condition of public business intrusted to their charge. * * * (7) When required by the public service or directed by the governor, to assist any district or county attorney in the discharge of his duties."

In *State* v. *District Court,* 22 Mont. 25, 55 P. 916, the Montana Supreme Court had before it a similar question. The Montana statute involved was almost identical with the Utah Sec. 105-19-9 but provided only that "the county attorney of the county may at all times, appear before the grand jury," Pen. Code Mont. 1895 § 1788, omitting the words "or attorneys for the state" contained in the Utah section. The attorney general, by petition for a writ of mandamus, sought to compel the lower court to permit him to attend sessions of a grand jury, contending that his general supervisory power authorized him to so appear. The Supreme Court, in applying statutes relating to the supervisory power of the attorney general, which statutes were essentially the same as the provisions quoted above from Sec. 87-6-1, held that the attorney general had the right to appear before the grand jury. See also *State* v. *Taylor,* 59 Idaho 724, 87 P. 2d 454 and *Sacramento County* v. *Central Pacific Ry. Co.,* 61 Cal. 250, decided in 1882, wherein the California Supreme Court in construing a statute, Cal. Pol. Code, Sec. 470, regarding the supervisory power of the attorney general, held that:

"The District Attorney had the power to commence and prosecute the action, subject to the supervision of the Attorney General (Pol. Code, 470.) The last named officer has power, whenever, in his opinion, the public service requires it, to 'assist' the District Attorney. (Ibid.) When he thus assists the District Attorney, he may, by virtue of his 'supervisory power over the District Attorneys in all matters pertaining to the duties of their offices,' assume a paramount control and direction of the business he and the District Attorney are jointly conducting."

Our holding in *State* v. *Mickel,* supra, 23 Utah 507, 65 P. 484, 485, also supports the view that the attorney general can appear before the grand jury for the implication of that holding was that any "attorney for the state" could appear, and it must be admitted that the attorney general is an attorney for the state.

This brings into focus the status of Zar E. Hayes and Joseph E. Evans as assistant attorneys general. All agree,

as well they must, that there is no express statutory authority for the appointment of assistant attorneys general. Sec. 87-9-1 authorizes the appointment of a "deputy" to act during the absence or disability of the attorney general, though even the deputy, functioning under this authorization, may not perform the duties pertaining to the office of the attorney general as a member of any board. It was stipulated that neither Mr. Hayes nor Mr. Evans was a deputy appointed under this section. The defendants, in support of the contention that the assistant attorneys general are attorneys for the state, point to two things: First, the legislature has for many years appropriated money to pay the salaries of said assistants; and second, the duties of the attorney general are such that it would be impossible for any one individual to perform them without assistance.

The office of attorney general is created by Article VII, Sec. 1 of the Constitution of Utah. It provides that office of attorney general shall be a part of the executive department. Sec. 18 of Article VII provides that:

"The Attorney-General shall be the legal advisor of the State officers, and shall perform such other duties as may be provided by law."

The Illinois Supreme Court in construing similar provisions in the Illinois Constitution held that the attorney general had all the powers and duties of the attorney general at the common law. See *Fergus* v. *Russel*, 270 Ill. 304, 110 N. E. 130, Ann. Cas. 1916B, 1120. Then in *Saxby* v. *Sonnemann*, 318 Ill. 600, 149 N. E. 526, 528, the court, in answer to a contention that the attorney general had no power to appoint assistants, said:

"By section 1 of article 5 of the Constitution of 1870 the office of Attorney General is made a part of the executive department of the state. The Constitution confers no express powers upon the Attorney General and prescribes no express duties for him. It provides that he shall perform such duties as may be prescribed by law. The office of Attorney General was one known to the common law, and under it he had well-known and well-defined powers. It was not necessary to enumerate all the powers vested in the Attorney General or include them in the Constitution. The Attorney General is the chief law officer of the state, and in the creation of that

office there was ingrafted upon it all the powers and duties of the Attorney General as the same were known as the common law. [Citing the Fergus case and others.] It is, of course, easily seen that in a great state such as this the multiplicity of duties of the Attorney General forbid personal attention to all of them. He must, and does, have power to appoint the necessary deputies or assistants to aid in carrying out those duties."

While we do not desire to approve the reasoning of the Illinois Court in the Fergus case in which it held that the Attorney General, under a constitutional provision similar to ours, has all the powers and duties of the Attorney General as the same was known to the common law, yet we do believe that the mutliplicity of duties of the Attorney General under our statutes are such that the power to appoint assistants is necesarily implied. In view of the absence of statutory restrictions on the power of the attorney general to appoint assistants, and the legislative recognition of assistants by appropriating money for their salaries, we hold that the attorney general does have power to appoint such assistants as are necessary to accomplish the performance of the duties imposed upon him by law.

This power to appoint assistants to aid him in the performance of the duties imposed upon him by law is the power to appoint sub-agents for the state. While the assistants function through the name and by the authority of the attorney general, they are nevertheless representatives of the state in so far as they operate within the scope of their authority as prescribed by the attorney general acting in the proper scope of his authority. Some duties of the attorney general are such that they can be performed only by regularly licensed members of the bar. Others by their very nature are non-delegable and must be performed personally by the attorney general. The duties of the attorney general before the grand jury are attorney functions. Assistants representing the interests of the state on behalf of the attorney general must necessarily be attorneys. In performing the functions of the attorney general before the grand jury they represent the state and as

such must be held to come within the provisions "attorneys for the state" which provision should be construed to mean those attorneys present before the grand jury to represent the interests of the state.

Of course, if the duties of the attorney general before the grand jury were in their nature such that they could not be performed through assistants, then the acts of the attorney assistants would be unauthorized. See generally the discussion in *State Tax Commission* v. *Katsis*, 90 Utah 406, 62 P. 2d 120, 107 A. L. R. 1477.

While grand juries are seldom called, it is possible to have grand juries in session in various places throughout the state at the same time. In the proper discharge of his duties it may be necessary in the public interest that the attorney general exercise his supervisory power in connection with more than one of such grand juries. Even where only one grand jury is in session in the state at a given time, its session often consumes many days. Constant attendance in person by the attorney general at such a session might and probably would conflict with his duties as a member of the Board of Examiners or the Board of Pardons, and his other duties. There appears to be no basic reason why the attorney general could not appear before the grand jury through an assistant. The early legislative history of Sec. 105-19-9 indicates that the section was never originally designed to limit the number of attorneys for the state who could appear before the grand jury. Rather it appears to have been designed to exclude private attorneys. It having been held that the attorney general, by virtue of his supervisory powers, could himself appear before a grand jury, and that the attorney general has the power to appoint assistants, we are of the opinion that the attorney general can appear before the grand jury through assistants. It is argued that the attorney general may appoint persons who have private "axes to grind" as assistants to go before a grand jury. But the office of the attorney general was created by the constitution and is one of the high offices of the state.

Responsibilities of so high a character as those imposed on the office of the attorney general are usually put upon a lawyer of ability and integrity. No system can be made fool-proof against the danger of the corruptness or dishonesty of the men instrusted with the various powers of state. We think the danger of their misusing their office for private purposes is outweighed by the practical fact that they, not being gifted with omnipresence, must be permitted to act where feasible by properly appointed assistants. We conclude that the two assistant attorneys general were properly permitted to appear before the grand jury in behalf of the attorney general to aid the district attorney in the discharge of his duties.

In their original petition for a writ of prohibition the petitioners sought only to test the legality of the grand jury. After the alternative writ had been granted, petitioners asked leave to amend their petition to also test the sufficiency of the indictment. All concerned stipulated that this latter question might be determined now. Ordinarily prohibition will not lie to test the sufficiency of an indictment so long as it states an offense known to the law and over which the court has jurisdiction. See *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377; *Barlow* v. *Davis*, 103 Utah 566, 137 P. 2d 357. Even when practical considerations would have warranted the use of the writ of prohibition to avoid the expense and time of a lengthy trial when the matter was before us so that we could have told whether it would have had to have been reversed on appeal, we have refused to do so. *State ex rel. Welling* v. *District Court*, 87 Utah 416, 49 P. 2d 950. However, we are not without discretion in this matter. See *Broadbent* v. *Gibson*, 105 Utah 53, 140 P. 2d 939; *Washington County* v. *State Tax Commission*, 103 Utah 73, 133 P. 2d 564. In the instant case the lower court had jurisdiction over the parties and the subject matter and the remedy by appeal is clearly adequate. Yet the lower court had already been stayed for the purposes of our determining whether or not the grand jury was legally

constituted, and there would be practically no additional delay because of a determination of the sufficiency of the indictment. The lower court had held the indictment to be sufficient. We recognized that if this ruling were wrong, the state would have had the expense and the lower court would have gone through an extended trial, only to be reversed because of error which existed at the very threshold of the trial. Thus, at the time the proposed amendment was offered, practical considerations, as mentioned above, seemed to dictate that we consider the sufficiency of the indictment in connection with the other issues raised by the petition. We therefore granted leave to amend the petition for the writ.

Upon consideration of the question of the sufficiency of the indictment we encountered questions concerning the application and constitutionality of the various sections of Chapter 21, Title 105, U. C. A. 1943, relating to use of the short form indictment. None of these questions have been briefed. Although we could resolve these questions without the assistance of counsel, it does not now seem advisable to do so, especially in view of the fact that the questions involved have many ramifications closely allied to questions which may subsequently arise as the trial proceeds. The matter can better be disposed of as a whole rather than piecemeal.

The alternative writ heretofore issued is recalled.

McDONOUGH and WADE, JJ., concur.

TURNER, J., concurs in the result.

LARSON, Chief Justice (concurring specially).

I concur in the result arrived at by Mr. Justice Wolfe, but cannot concur in many statements in the opinion, nor in much of the rationale on which the conclusions are based.

The opinion states that we need not determine whether it was the judge or the court who in chambers entered the

order calling the grand jury, and that we will presume that he did it in whichever capacity he should have been in to do it. I simply cannot follow such reasoning. I cannot draw fine distinctions between the court and the judge of the court. Of course, the word "court" is sometimes used to indicate a session of the court as when one speaks of "being in court," but when speaking of the "powers of the court" or a thing being "done by the court" we have in mind the exercise of the judicial function of government. The court and the court only can exercise the judicial function or power. Any act which is an exercise of judicial power must be performed by the court. When the statute says the judge may do certain things which are judicial in nature, the term "judge" is synonymous with the term "court." The question here is simply this: Is the calling of a grand jury an exercise of the judicial function or of the police power? The grand jury is an accusatory body. Its primary purpose and function is to bring accusations against persons suspected of violating the laws of the state. See Sec. 105-18-13, U. C. A. 1943. This is the same duty as is performed by the county attorney, the district attorney, the sheriff and police officers of the county. The bringing of an accusation is not the judicial function; it is not an exercise of judicial power. It is a preliminary step, a step necessary to invoke the judicial function, to set in motion the judicial machinery, to call into action the judicial power. I conclude that the calling of a grand jury is not the function of the judge as a court, but a power reposed in the individual who holds the office of judge to set in motion and step up the administration of the police power in bringing accusations against persons suspected of crime when the regular peace officers do not or cannot function in the public interest. Upon this ground, I agree that the indictment should not be quashed on the ground that the order directing the calling of a grand jury was not made from the bench in open court.

As to the matter of the assistants to the attorney general being present in the grand jury room, I agree such fact

is not ground for quashing the indictment. I think they were "attorneys for the state" within the statute but not upon the basis of reasoning used by Mr. Justice Wolfe. I think the term "attorneys for the state" means such persons as are by law charged with the duty of representing the state and duly holding an office created by the state, and the duties of which are such as an attorney must perform. Such offices are attorney general, district attorney and county attorney. I agree that the attorney general has power to appoint or deputize attorneys to assist him in the performance of his duties, and I think that his so-called assistant attorneys general are in effect deputies, an office authorized by law. I do not think the statute authorizing the attorney general to appoint a deputy (see Sec. 87-9-1, U. C. A. 1943) can rationally be construed to limit the appointment to one deputy. But I think the rule laid down in the prevailing opinion extends the powers of the attorney general over the conduct of criminal proceedings beyond the plain scope of our statutes. The statute, subdivision 7 of Sec. 87-6-1, U. C. A. 1943, provides the attorney general shall assist the district attorney or county attorney in the discharge of their duties. I do not understand "to assist a man" means to supplant him and take over his job.

The opinion, after stating that the assistant attorneys general must be held to be within the phrase "attorneys for the state," then reads:

"which provision should be construed to mean those attorneys present before the grand jury to represent the interests of the state."

I understand no attorney can be before the grand jury representing a private individual, and that the attorney who is permitted to be present is not there to represent the interests of the state any more than those of the possible accused. His duty is to aid and advise the grand jury in their investigations as impartially as they and is not there as a partisan or one bent on procuring indictments, or representing any party.

I think the prevailing opinion arrives at the correct solution, and for the reasons herein indicated I concur in the result.